UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Nichole T. Wilkins and
Estate of Beverly L. Mulcahey

    v.                                            Civil No. 18-cv-750-JL
                                                                 Opinion No. 2019 DNH 018
Rymes Heating Oils, Inc. and
Rymes Energy Holdings, LLC

**MEMORANDUM ORDER**

This appeal from the Bankruptcy Court turns on the nature of appellants' claims. While appellants frame their case as one for successor liability based on Title VII claims against the purchaser in a bankruptcy sale, they seek payment of settlement amounts agreed to with the debtor after the sale. Finding no error in the Bankruptcy Court's determination that its order approving the sale forecloses successor liability for these settlement amounts, this court affirms the Bankruptcy Court's decision.

I.   **Applicable legal standard**

This court has jurisdiction over appeals from "final judgements, orders, and decrees" of the Bankruptcy Court under 28 U.S.C. § 158(a)(1). See also LR 77.4. When hearing an appeal from the Bankruptcy Court, this court applies the same standards of review governing appeals of civil cases to the appellate courts. See Groman v. Watman (In re Watman), 301 F.3d

3, 7 (1st Cir. 2002). As such, this court reviews the Bankruptcy Court's "findings of fact for clear error and conclusions of law de novo." Old Republic Nat'l Title Ins. Co. v. Levasseur (In re Levasseur), 737 F.3d 814, 817 (1st Cir. 2013). This court reviews the Bankruptcy Court's "order granting a motion to dismiss for failure to state a claim de novo." In re Montreal, Maine & Atlantic Railway, Ltd., 888 F.3d 1, 7 (1st Cir. 2018).

## II. Background

Appellants Nichole T. Wilkins and Beverly L. Mulcahey were previously employed by Fred Fuller Oil & Propane Co., Inc. ("FFOP").[1] They sued FFOP and its president, Fred J. Fuller, for discrimination, a hostile work environment, assault, and retaliation under both Title VII of the Civil Rights Act of 1964 and RSA 354-A.[2] On the eve of trial, FFOP filed for bankruptcy protection, which stayed the appellants' suit.[3] Appellants' counsel filed an appearance in the bankruptcy.[4]

---

[1] Mulcahey is represented in this action by her estate as administered by her husband, Raymond Mulcahey. Appellants' App. Vol. 1 (doc. no. 14) at 2 ¶ 3.

[2] Id. at 3-4 ¶¶ 8-13.

[3] Id. at 4 ¶ 14.

[4] Id. at 197.

Shortly afterward, FFOP moved for an order authorizing the private sale of all or substantially all of its assets to appellee Rymes Heating Oils, Inc.[5] In response, appellants' counsel contacted counsel for FFOP and Rymes, threatening to move to attach real estate holdings that would be transferred in the sale.[6] Appellants' counsel did not follow through on this threat and did not file any objection to the proposed sale. She appeared at the hearing where the Bankruptcy Court considered objections to the motion.[7] The Bankruptcy Court approved the sale in an order ("Sale Order") providing that, with certain irrelevant exceptions:

> [T]he sale of the purchased Assets pursuant to the Asset Purchase Agreement is and shall be free and clear of all . . . "Liens" [] and all debts, liabilities, objections, commitments, responsibilities, claims (as that term is defined in the Bankruptcy Code) including, but not limited to, all product liability claims, claims arising under contracts, licenses, or other agreements . . . counterclaims, defenses and offsets of any kind or nature, arising prior to closing or relating in any way to any acts of [FFOP] prior to Closing, however

---

[5] Id. at 198. While the parties previously disputed the status of appellee Rymes Energy Holdings, LLC, appellants do not appeal the Bankruptcy Court's determination that both appellees fell within its sale order. Appellants' App. (doc. no. 15) at 552-53; Appellants' Br. (doc. no. 16) at 3 n.2. No distinction between the appellees is relevant to the resolution of the appeal, so the court refers to the appellees collectively as "Rymes." See Wilkins v. Rymes Heating Oils, Inc., 17-cv-744-JL, 2018 WL 1187412 at *1 n.4 (D.N.H. Mar. 7, 2018).

[6] Appellants' App. Vol. 1 (doc. no. 14) at 6 ¶ 22, 540.

[7] Id. at 83 ¶ 21.

3

>   arising (the foregoing collectively refer to as
>   "Claims"), with Liens or Claims to attach to proceeds
>   of sale, pursuant to section 363(f) of the Bankruptcy
>   Code.  All persons holding Liens or Claims of any kind
>   against [FFOP] or the Purchased Assets . . . are
>   hereby forever barred, estopped, restrained and
>   permanently enjoined from asserting such Liens or
>   Claims against the Buyer, its successors or assigns
>   . . . .  The Buyer is not a successor to [FFOP] or its
>   estate by reason of any theory of law or equity and
>   the Buyer shall not assume or in any way be
>   responsible for any liability, obligation, commitment
>   or responsibility of [FFOP] and/or estate, or any
>   debts, liabilities, responsibilities or commitments in
>   any way relating to the Purchased Assets or the
>   [FFOP]'s use of the Purchased Assets prior to the
>   Closing, except as otherwise expressly provided in the
>   Asset Purchase Agreement.[8]

And further:

>   Neither the purchase of the Purchased Assets by
>   [Rymes] nor the subsequent operation by [Rymes] of any
>   business previously operated by [FFOP] shall cause
>   [Rymes] to be deemed a successor in any respect to
>   [FFOP]'s business within the meaning of any law, rule
>   or regulation, including but not limited to any
>   revenue, pension, ERISA, tax, labor or environmental
>   law, rule or regulation or under any products
>   liability law with respect to [FFOP]'s liability.[9]

More than a year later, appellants reached a settlement agreement with FFOP.  This settlement, which was approved by the Bankruptcy Court, allowed appellants certain unsecured claims against the bankruptcy estate, totaling $3,761,263.[10]  But these claims would be paid only in conjunction with other unsecured

---

[8] Id. at 269.

[9] Id. at 274.

[10] Appellants' App. Vol. 2 (doc no. 15) at 515-20.

4

claims, and the joint motion in support of the settlement noted that for the subordinated claims making up more than $2.5 million of the total, "it is unlikely that any dividend will be paid on those claims in [FFOP]'s judgment."[11]

Appellants hoped that adversary proceedings against Fred J. Fuller, his family, and other associates would recover assets sufficient to substantially pay off the settlement.[12]  But these efforts proved fruitless and appellants determined that "FFOP has an inability to pay the amount of settlement."[13]

Appellants then brought this suit against Rymes in Merrimack County Superior Court alleging that Rymes is liable for the settlement agreement under a theory of successor liability.  Appellees removed it to this court and moved to refer the case to the Bankruptcy Court.  This court granted that motion, finding that "[l]iability for the [appellants]' Title VII claims against FFOP and the amount of damages owed them has been resolved through the [appellants]' and FFOP's settlement of those claims. . . . [T]he only claim at issue here is whether the Rymes companies may be held to account for the settlement as

---

[11] Id. at 503 ¶ 4.  Any funds recovered from appellants' litigation against Fred J. Fuller personally would credit against these subordinated claims.

[12] Appellants' App. Vol. 1 (doc. no. 14) at 8 ¶ 33.

[13] Id. at 7-8 ¶¶ 32-36.

5

FFOP's alleged successor." Wilkins v. Rymes Heating Oils, Inc., 17-cv-744-JL, 2018 WL 1187412 at *3 (D.N.H. Mar. 7, 2018). Whether Rymes may be held liable as successors to FFOP depends on the Sale Order, and "the First Circuit Court of Appeals has unequivocally determined that when '[t]he underlying dispute . . . involves a subsequent purchaser's interpretation of a sale order "free and clear of liens" under 11 U.S.C. § 363(b),'" a bankruptcy court has jurisdiction to resolve the matter. Id. at 3 (quoting Middlesex Power Equip. & Marine, Inc. v. Town of Tyngsborough, Mass. (In re Middlesex Power Equip. & Marine, Inc.), 292 F.3d 61, 68 (1st Cir. 2002).

The Bankruptcy Court, after a hearing, granted appellee's motion to dismiss the complaint. It found that "the Sale Order . . . unambiguously bars the prosecution of these claims against" Rymes, and so did not reach the merits of the successor liability question.[14]

III. **Analysis**

Appellants raise three issues. They argue: (1) that the Bankruptcy Court erred in dismissing their claim solely on the basis of the Sale Order; (2) that the Bankruptcy Court erred by not weighing the competing interests of the federal schemes for bankruptcy and remediation of federal employment law violations;

---

[14] Appellants' App. Vol. 2 (doc no. 15) at 550-55.

and (3) that assuming that successor liability is not barred by the sale order, the issue must be remanded to an Article III court rather than the Bankruptcy Court.  Because the court affirms the Bankruptcy Court on the first two issues, it does not reach the third.

### A.  Dismissal on the basis of the sale order

Appellants do not contest that the Sales Order purports to block assertions of successor liability against Rymes.  Instead, their argument mixes two issues – whether a bankruptcy court has the power to issue a sales order that blocks successor liability claims of the type they bring, and whether a bankruptcy court has jurisdiction to rule on the application of its orders to such successor liability claims.

The latter issue has already been decided by this court in this case.  Per Middlesex, if the "underlying dispute [] involves a subsequent purchaser's interpretation of a sale order 'free and clear of liens' under 11 U.S.C. § 363(b), an order that can only be issued by a bankruptcy court, . . . it is one that arises in a case under title 11 or perhaps arises under title 11." [15]  292 F.3d at 68.  The subsequent ruling in Gupta v.

---

[15] The bankruptcy court in Middlesex exercised its ability to abstain from deciding the dispute.  292 F.3d at 63.  Appellants suggest that the Bankruptcy Court here could have abstained, but make no argument that it was required to do so.  For cases based on "arising in" or "arising under" jurisdiction, like this one,

Quincy Medical Center did not disturb this holding, as Gupta itself explained. 858 F.3d 657, 665 (1st Cir. 2017). While Middlesex "involved the interpretation of a specific provision of a sale order, [the Gupta appellants] have failed to identify any provision of the Sale Order itself . . . underlying their claims." Id. Unlike Gupta, where the underlying dispute concerned the terms of an asset purchase agreement between the debtor and purchaser, this case, like Middlesex, turns on the terms of the sale order issued by the Bankruptcy Court itself.[16]

Appellants' other argument, generously construed, is that a sales order issued by a bankruptcy court cannot simply block all assertions of successor liability. While this may be true, the cases appellants cite are all plainly distinguishable from their attempt to assert successor liability.

First, Zerand-Bernal Group, Inc. v. Cox concerned products-liability plaintiffs who were not injured until well after the bankruptcy sale, and so had no opportunity to bring a claim against the debtor or the estate. 23 F.3d 159 (7th Cir. 1994); see also In re Gruman Olson Indus., Inc., 467 B.R. 694 (S.D.N.Y.

---

abstention is permissive and not mandatory. Middlesex, 292 F.3d at 67-68.

[16] Similarly, Marotta Gund Budd & Dzera LLC v. Costa involved allegations of defamation tangential to a bankruptcy, and did not turn on any order of the bankruptcy court. 340 B.R. 661 (D.N.H. 2006) (DiClerico, J.).

2012)(same).  Appellants brought their employment claims against the debtor before the bankruptcy and chose to settle those claims after the bankruptcy sale.  While a sales order may not necessarily extinguish claims arising from injuries that do not exist at the time of the sales order, that is no aid to appellants.

Next, Teed v. Thomas & Betts Power Sols., L.L.C., discussed infra, does not concern a bankruptcy sale order.  711 F.3d 763, 768 (7th Cir. 2013).

And in Middlesex, the underlying Massachusetts Land Court decision appears to have turned on the property tax nature of the liens in question, and that decision was not considered or affirmed on its merits by the Court of Appeals.  292 F.3d at 65.

None of the authorities marshalled by appellants in support of their jurisdictional arguments suggest that a bankruptcy court lacks the power to enjoin claims such as appellants', or lacks the authority to interpret the application of its own order to such claims.

   B.   **Failure to weigh successor liability factors**

Appellants' second argument overlaps with the first.  Even if a bankruptcy court can block successor liability claims through a sales order, they contend that enforcement of that

9

sales order must be weighed against other interests, such as the potentially competing federal scheme of employment law.

Appellants rely primarily on Teed.  There, the Seventh Circuit Court of Appeals weighed factors in ultimately allowing successor liability against the purchaser of assets from a Wisconsin law receivership proceeding, despite a declaration that the sale was free and clear of all unassumed liabilities and a specific repudiation of any successor liability on the Fair Labor Standards Act claims at issue.  711 F.3d 763.  Arguably, Teed suggests a case-by-case analysis of successor liability claims even where such liability is disclaimed.  Appellants urge that approach rather than that of In re Trans World Airlines, which upheld the extinguishment of successor liability for employment discrimination claims pursuant to a § 363(f) sale.  322 F.3d 283 (3rd Cir. 2003) ("TWA").[17]  But Teed, vitally, does not concern a federal bankruptcy court's order.  Indeed, it cites TWA, noting that the Teed defendant did not raise a key argument which might have particular force in the bankruptcy context.  711 F.3d at 768.

---

[17] While the First Circuit Court of Appeals has neither adopted nor rejected TWA, the Bankruptcy Appellate Panel of the First Circuit has adopted the broad construction of the terms "any interest" in § 363(f) employed by TWA.  See In re PBBPC, Inc., 484 B.R. 860, 868-69 (B.A.P. 1st Cir. 2013).

10

Ensuring an orderly process for competing creditors is particularly important in the bankruptcy process. See TWA, 322 F.3d at 291-293.  Appellants have identified no case holding that successor liability should be permitted despite a bankruptcy court's "free and clear" sales order where the alleged injury occurred prior to the entry of the order.  Cf. Faulkner v. Bethlehem Steel/Int'l Steel Grp., No. 2:04-CV-34-PS, 2005 WL 1172748 at *3 (N.D. Ind. Apr. 27, 2005) ("[Plaintiff] cites a number of cases for the proposition that successor liability applies in Title VII and § 1981 cases . . . [b]ut none of the cases he cites involved a sale approved by a bankruptcy court.").

But even if there is a conflict between Teed and TWA, that dilemma is not before the court and need not be resolved to affirm the Bankruptcy Court.  Appellants' successor liability claim in this case is not "a claim in the nature of personal injury or tort claims, arising under Title VII."  Wilkins, 2018 WL 1187412 at *3 (quotations omitted).  Appellants settled their claims against FFOP, after the bankruptcy sale, in exchange for unsecured claims.  The issue is not whether, in the abstract, Rymes might be held liable for Title VII claims based on the appellants' pre-sale employment with FFOP, but whether Rymes can be required to pay the settlement amounts that post-sale FFOP agreed to.  Appellants argue that their "claim of successor

liability is for liability for the Title VII claim, which happens to be reduced to a judgment.  No one has explained how the two can be divorced as far as successor liability."[18]  The point of divorce is clear – the bankruptcy sale.  Successor liability may obligate a purchaser to bear the liabilities associated with a seller or debtor's pre-sale operations.  But the purchaser has no successor liability for the actions of the seller or debtor taken after the sale.

Appellants' successor liability claims in this action assume that Rymes can be held responsible for FFOP's decision, more than a year and a half after the sale, to accept liability for the Title VII claims in a settlement.  The settlement, approved by the bankruptcy court, granted bankruptcy-specific relief:  a particular set of unsecured claims from FFOP's estate.  These settlement claims are not attributable to Rymes, and the Bankruptcy Court correctly found that it did not need to go beyond the sale order to reach this conclusion.[19]

---

[18] Appellants' Surreply on Appellee's Rule 8020 Mot. (doc. no. 13) ¶ 11.

[19] Appellees argue that because appellants appeared in the bankruptcy and did not object to the sale, *res judicata* bars their claims.  This court, like the Bankruptcy Court, does not reach that argument.  See Appellees' App. Vol. 2 (doc. no. 15) at 530-32.

## IV. Appellees' Rule 8020 motion

Bankruptcy Rule 8020 permits a district court to award just damages and single or double costs to the appellee if it determines that an appeal was frivolous.

> While there is no set formula for determining whether an appeal is frivolous, courts in the First Circuit generally consider whether the appellant acted in bad faith, and whether the argument presented on appeal is meritless in toto or only in part. Other factors to be considered are whether the appellant's own argument effectively addresses the issues on appeal, fails to cite any authority, cites inapplicable authority, makes unsubstantiated factual assertions, asserts bare legal conclusions, or misrepresents the record. Generally, sanctions will be imposed regardless of the motive of the appellant because the rule seeks to compensate an appellee who has had to waste time defending a meritless appeal.

In re Kusek, 461 B.R. 691, 698 (B.A.P. 1st Cir. 2011). The rule "is far from a strict liability model. More than just a losing argument is necessary to support a conclusion that an appeal is frivolous." Id.

Appellees have moved for relief under Rule 8020. Contrary to appellants' argument, this motion does not suggest any improper purpose. As discussed supra, Rymes cannot reasonably be held liable for FFOP's post-sale settlement of appellants' claims, and so Rymes's frustration with the appeal is understandable. But the appeal is not frivolous. While appellants' contention that successor liability in support of federal employment law interests ought to outweigh a "free and

13

clear" sale under the bankruptcy code is not directly supported by any authority, it is true that TWA has not been clearly adopted by the First Circuit Court of Appeals and that Teed does not entirely foreclose extending its approach to bankruptcy. Appellants have addressed this issue in their appeal and cited authority in support of it.  They have not asserted bare legal conclusions or misrepresented the record.  While they have not acknowledged that the settlement of their claims against FFOP after the sale is an intervening action which undermines their successor liability theory, the Bankruptcy Court's decision arguably did not rely on that basis.[20]  Finally, although not determinative, there is no suggestion in the record that appellants have brought the appeal in bad faith.  The factors thus weigh against frivolousness.

## V.   Conclusion

Under the Sale Order, appellees are not subject to successor liability for FFOP's settlement with appellants.  The Bankruptcy Court's decision to grant Rymes' motion to dismiss the complaint is AFFIRMED.  Appellees' motion pursuant to Federal Rule of Bankruptcy Procedure 8020 is DENIED.[21]

---

[20] Appellants' App. Vol. 2 (doc. no. 15) at 555.

[21] Document no. 6.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: January 31, 2019

cc: Leslie H. Johnson, Esq.
 Christopher M. Candon, Esq.
 Courtney H.G. Herz, Esq.